**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Emily Andreina N.V.,                                        No. 26-cv-2570 (KMM/EMB)

      Petitioner,

v.                                                                              **ORDER**

Todd Blanche, et al.,

      Respondents.

---

Petitioner Emily Andreina N.V. ("Petitioner" or "Ms. N.V.") filed this action seeking a writ of habeas corpus and an order requiring Respondents to release her from U.S. Immigration and Customs Enforcement (ICE) detention. In part, Ms. N.V. claimed that Customs and Border Patrol (CBP) agents unlawfully arrested her without an appropriately issued administrative warrant. After receiving Respondents' Memorandum in Opposition to the Petition and Petitioner's Reply, United States Magistrate Judge Elsa M. Bullard held an evidentiary hearing on July 1, 2026.[1] The parties submitted post-hearing briefing (Dkt. 21, 22), and on July 18, 2026, Judge Bullard issued a Report and

---

[1] Judge Bullard received several exhibits into evidence: (1) a Form I-200 warrant of arrest (Ex. 1); (2) a Form I-213 Record of Deportable/Inadmissible Alien (Ex. 2); (3) six CBP agent bodycam videos (Ex. 3 (Ritz), Ex. 4 (Marcus), Ex. 5 (Lebow), Ex. 6 (Scarborough), Ex. 7 (McIntee), Ex. 8 (Clausen)); and (4) a January 28, 2026 memo from form ICE Director Todd Lyons (Ex. 9). Judge Bullard also heard testimony from Ms. N.V. and CBP Agent Marcus. *See generally* Hr'g Tr. (Dkt. 23-1). In conducting a de novo review of this matter, the Court has considered the documentary evidence, reviewed the bodycam footage, and considered the testimony reflected in the hearing transcript. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008) (discussing the review a district judge must undertake when a magistrate judge's report and recommendation follows and is based upon an evidentiary hearing).

1

Recommendation (R&R) recommending that Ms. N.V.'s petition be granted and that Respondents be ordered to immediately release her from custody. R&R (Dkt. 24).

On February 26, 2026, CBP agents in the Grand Forks Sector Intelligence Unit sought to apprehend Ms. N.V.'s partner, Orlando. The agents observed Orlando sitting in the driver's seat of his car parked outside his apartment building in Grand Forks. Ms. N.V. was in the front passenger seat of the vehicle. She was not the target of the operation, and the CBP agents had no warrant for her arrest. Seven agents and a canine surrounded the vehicle and ordered the occupants to exit. Neither Orlando nor Ms. N.V. immediately got out of the vehicle, though Ms. N.V. did not understand what the officers were saying because the windows of the car were rolled up. Eventually, an agent shattered the driver's side window, physically removed Orlando from the vehicle, and took him to the ground.

As Orlando was taken into custody, another agent opened the front passenger door and pulled Ms. N.V. out of the car, ripping off one of her fingernails in the process. The same agent placed Ms. N.V. in handcuffs, and then several agents took her to a nearby law enforcement vehicle and placed her in the back seat. Once in the agents' vehicle, Ms. N.V. told them her age and that she was from Venezuela. She also explained that her identification was in the vehicle she had been removed from, but agents did not immediately look for her ID. Instead, agents took Ms. N.V. to sector headquarters for processing. She has been in immigration custody since her February 26th arrest.

In the R&R, Judge Bullard found that CBP agents did not arrest Ms. N.V. pursuant to any administrative warrant, a reality on which both parties agree. Therefore, Judge Bullard analyzed whether Petitioner's arrest complied with the federal law governing

2

warrantless arrests of noncitizens: 8 U.S.C. § 1357. Two portions of this statute are relevant to this case. First, law enforcement may arrest a noncitizen without a warrant if the individual commits a federal offense in the officer's presence. *Id.* § 1357(a)(5)(A). Second, agents may make a warrantless arrest of a noncitizen if they have "reason to believe the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." *Id.* § 1357(a)(2). The "reason to believe" standard is synonymous with constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

In recommending that Ms. N.V.'s petition be granted, Judge Bullard found the following: (1) the agents did not have probable cause that Petitioner had committed the crime of concealing, harboring, or shielding from detention an alien unlawfully present in the United States;[2] (2) the agents did not have reason to believe that Ms. N.V. was unlawfully present in the United States; and (3) the agents lacked a reasonable belief that she was likely to escape before a warrant for her arrest could be obtained. R&R 10–17. Having concluded that Petitioner's arrest was not justified under either § 1357(a)(5) or

---

[2] Respondents do not object to Judge Bullard's conclusion that the agents could not lawfully have arrested Ms. N.V. pursuant to § 1357(a)(5) because they lacked probable cause to believe that she committed the crime of harboring or concealing Orlando from detention. Because Respondents do not object to that conclusion, the Court has reviewed it for clear error, and finding none, the Court agrees with the R&R on that point. *See Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) ("In the absence of timely objections, this Court reviews an R&R for clear error."); *Lewis v. Rardin*, No. CV 23-2746 (JWB/DTS), 2025 WL 1920527, at *1 (D. Minn. July 11, 2025) ("The Court reviews any aspect of an R&R to which no specific objection is made for clear error."), *aff'd,* No. 25-2855, 2025 WL 4659593 (8th Cir. Nov. 4, 2025).

§ 1357(a)(2), Judge Bullard concluded that her "arrest was therefore unlawful *ab initio*, and the proper remedy is release."[3] R&R at 18.

Respondents filed timely Objections to the R&R. Obj. (Dkt. 25). Respondents argue that the evidence was sufficient to support the lawfulness of Ms. N.V.'s warrantless arrest under both prongs of 8 U.S.C. § 1357(a)(2), and they contend that even if the arrest was not supported by the requisite probable cause, release is not the appropriate remedy. The Court has reviewed the matter de novo. 28 U.S.C. § 636(b)(1) (requiring a district judge to "make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made"); Fed. R. Civ. P. 72(b)(3) (same). Based on that careful review of the record, Respondents' Objections are overruled, the R&R is accepted, and Ms. N.V.'s petition is granted.

***Unlawfully Present***

First, Respondents take issue with the R&R's conclusion that the arresting agents lacked probable cause to believe that Ms. N.V. was unlawfully present in the United States. Respondents point to CBP Agent Marcus's testimony that agents learned Ms. N.V. was from Venezuela and "she didn't say anything about having documents," so they "weren't sure if she was here unlawfully or not." Obj. at 2 (citing Tr. 55:19–23). Further, Respondents rely on Agent Marcus's testimony that after agents asked Petitioner where she

---

[3] Because Judge Bullard concluded that Ms. N.V. should be released based on her unlawful arrest claim, Judge Bullard declined to reach the remaining statutory and constitutional claims in the Petition. R&R at 19.

was from and whether she had ID, they began to think she was here unlawfully. *Id.* (citing Tr. 60:14–23).

Reviewing the entire record and assessing the issue of probable cause based on the totality of the circumstances, the Court agrees with the R&R's conclusion that the arresting agents did not have probable cause to believe that Petitioner was unlawfully present when they placed her under arrest. They knew Petitioner's age, that she was from Venezuela, that she was in the car with someone who was the target of an immigration enforcement, and that she told them her identification was in the vehicle she had been occupying moments before she was removed from it and placed in handcuffs. The Court can find no evidence in the record to support Respondents' suggestion that Ms. N.V. admitted she did not have legal documentation prior to her arrest. *See* Dkt. 21 at 4. Indeed, the narrative describing the arrest in the Form I-213 that Respondents cite states that Ms. N.V. "*eventually* admitted that she . . . did not have the proper or legal documentation to be in the United States legally," Ex. 2 at 3 (emphasis added), but the testimony at the hearing confirmed that before taking Ms. N.V. into custody, and bringing her to the sector headquarters, the arresting agents did not know her immigration status, Tr. 28:10–29:12. After she told agents that she was from Venezuela, the agents "didn't follow up their nationality question by asking what [her] immigration status was," and did not review her identification. R&R at 14 (citing Tr. 29).

Petitioner's conduct during her initial arrest also did not provide probable cause that she was here unlawfully. Neither the bodycam videos nor the testimony at the hearing support Respondents' assertion that Ms. N.V. was unwilling to comply with commands to

5

exit the vehicle or that she attempted to flee when she was removed from it. When the officers first commanded Ms. N.V. to exit the vehicle, the windows were closed and agents were simultaneously shouting directions over one another. The evidence shows that when the agents opened the driver's side door of the vehicle, Ms. N.V. unbuckled her seatbelt and reached for the handle to open her door, but Agent Scarborough opened the passenger-side door and pulled her out of the car before she could complete her attempt to comply with his commands to exit. Ex. 6 at 2:25–2:50; Ex. 3 at 2:40–3:00. When she was taken out of the vehicle, her phone fell to the ground and she slipped as she attempted to pick it up. Ex. 4 at 2:35–2:50. Ms. N.V.'s fingernail was ripped off and she was bleeding and in pain, at which point she was quickly placed into handcuffs. Ex. 6 at 2:45–3:00.

Thus, even if Respondents are correct that her initial seizure was not a full arrest, *see* Dkt. 21 at 3–4, they do not suggest that her detention had not become an arrest when the agents chose to take her to the sector headquarters for processing. And at that point, the information known to them did not provide probable cause to believe that Ms. N.V. was unlawfully present in the United States.[4]

### *Likely to Escape Before a Warrant Can Be Obtained*

Next, Respondents argue that the arresting agents had probable cause to believe that Ms. N.V. was likely to escape before a warrant could be obtained for her arrest, asserting

---

[4] This Court agrees with Judge Bullard's observations that a reasonable belief in unlawful presence was not advanced by the fact that officers knew Ms. N.V. was in the car with Orlando and was from another country. R&R at 12, 13 (citing *United States v Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (neither apparent foreign ancestry nor reasonable belief that other aliens were in car creates reasonable belief of passenger's alienage).).

that the "she was actively engaged in attempting to escape at the time of her initial detention." Obj. at 3. In doing so, Respondents contend that Petitioner presented a risk of escape because she was noncompliant with officer commands, Orlando resisted arrest, and she "had already attempted to escape." Dkt. 21 at 7. Further, they argue that "[s]he admitted to being from Venezuela and having no legal right to be in the United States. She provided no evidence that would negate a reasonable belief that she was an escape risk." *Id.*; *see also* Dkt. 5 at 22.

For several reasons, the Court disagrees that the agents had probable cause to believe Ms. N.V. was likely to escape before a warrant could be obtained. First, as noted above, the evidence simply does not support Respondents' assertion that Ms. N.V. admitted to unlawful presence in the United States prior to her initial arrest, or even prior to being taken away. Second, the fact that Ms. N.V. admitted to being from Venezuela does not support a finding that she was likely to escape before a warrant could be obtained for her arrest. *E.g.*, *Francisco M.A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) (explaining that even *unlawful* presence of a noncitizen in the United States does not equate with likelihood of escape because such an interpretation would "collapse" § 1357(a)(2)'s separate requirements into one). Third, for reasons discussed above and detailed in the R&R, the Court finds that the evidence does not support the conclusion that a reasonable officer under the circumstances would have believed that Ms. N.V. was noncompliant with commands. Indeed, the video evidence and hearing testimony indicates that Ms. N.V. attempted to comply with the agent's commands to exit the vehicle and answered questions that the agents posed to her. *See* R&R at 4–5, 13, 16.

7

Fourth, the Court agrees with the R&R's determination that evidence of Orlando's own noncompliance does not demonstrate that Ms. N.V. was likely to escape. R&R at 17. Moreover, based on the Court's own review of the bodycam footage and the testimony from the hearing, the Court cannot find that a reasonable officer under the circumstances would have developed a reasonable belief that Ms. N.V. had already attempted to escape and resisted being handcuffed. The video evidence shows that when an agent shattered the driver's side window, Petitioner did not attempt to flee but tried to comply with Agent Scarborough's instructions to exit the vehicle. Before she could do so, Agent Scarborough forcibly removed her. She slipped and briefly reacted to her phone falling to the ground. The agents were able to handcuff her within approximately thirty seconds after she was removed from the vehicle. Therefore, the Court does not find persuasive Agent Marcus's characterization that the video evidence depicts Ms. N.V.'s attempt to escape and to resist arrest. Tr. 53:17–54:4. The Court is also not persuaded by Agent Marcus's suggestion that it was a challenge for he and the other officers to place Ms. N.V. in handcuffs, Tr. 54:13–55:8, especially given that she is a little over five feet in height and weighs just over ninety pounds.

Finally, Respondents take issue with Judge Bullard's reliance on the interpretation of § 1357(a)(2)'s "likely to escape" prong reflected in a decision from another Judge in this District. Obj. at 4. Specifically, Respondents argue that the statutory analysis in *Walther Ademir A.S. v. Blanche* is incorrect. No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906 (D. Minn. June 16, 2026). The Court concludes otherwise. The *Walther Ademir A.S.* court provides a thorough and well-reasoned discussion of the meaning of this phrase, and this

Court finds its analysis persuasive. *Id.* at *3 (interpreting the phrase "likely to escape before a warrant can be obtained for his arrest" to mean "likely to evade detention by immigration officers," which "considers not just whether the noncitizen will be located at the scene of the encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at another clearly identifiable location") (citing cases). "[T]he relevant inquiry is not simply whether [the noncitizen] was likely to leave [the scene of the encounter] before [immigration officers] could obtain a warrant, but rather whether it was likely that ICE officers would be able to locate [the noncitizen] after obtaining a warrant to arrest him." *Id.* Here, Agent Marcus admitted that the agents did not consider whether they could obtain an administrative warrant and later return to arrest Petitioner. Tr. 51:6–9. After she was handcuffed and informed the agents that her identification was in Orlando's vehicle, the agents made no effort to review her ID, nor did they follow up to ask where she lived or inquire about her immigration status. Given that the Court finds unpersuasive Respondents' contention that Ms. N.V. attempted to flee and resisted arrest, these facts further support the conclusion that they lacked probable cause that she was likely to escape before a warrant could be obtained for her arrest.

Accordingly, the Court concludes that Respondents did not have the authority to arrest Ms. N.V. without a warrant pursuant to 8 U.S.C. § 1357(a)(2), and her arrest, therefore, was unlawful.

### *Remedy for Unlawful Arrest*

Finally, Respondents object to the R&R's conclusion that the appropriate remedy for an unlawful arrest is release. Obj. at 4–9. Again, the Court finds Respondents' position

9

unpersuasive. First, Respondents argue that the R&R's conclusion depends, at bottom, on a misreading of the Supreme Court's decision in *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Obj. at 4–6. But the Court does not see the R&R's reliance on other district court decisions that have cited *Munaf* as some clear indication that an order for an individual's release in a habeas case cannot flow from a conclusion that the person was arrested without lawful authority. Indeed, courts in this District have cited *Munaf* for the uncontroversial, general proposition that habeas corpus "is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." 553 U.S. at 693; *see also Walther Ademir A.S.*, 2026 WL 1734906, at *4 (citing District of Minnesota caselaw relying on *Munaf*). The proposition recognized by the *Munaf* Court is simply the background rule that habeas cases are generally about obtaining release from unlawful executive detention, and that release is the typical remedy for unlawful detention.

Respondents next argue that an unlawful arrest "cannot justify release as a remedy." Obj. at 7–8. The argument goes like this: the remedy for an illegal arrest is not to prohibit a prosecution, nor to overturn a valid conviction, but the exclusion of evidence; the exclusionary rule is not an appropriate remedy in most immigration cases; thus, if suppression of evidence is not an appropriate remedy in an immigration case for a Fourth Amendment violation, then it follows that release from custody cannot be the appropriate remedy either. *Id.* But this argument fails because its syllogism depends on an incorrect premise. True, in *United States v. Crews*, the Supreme Court rejected the defendant's claim that because his arrest was not supported by probable cause, he should be immune from criminal prosecution. 445 U.S. 463, 474 (1980). And in *INS v. Lopez-Mendoza*, the Court

10

rejected the noncitizen's claim that his deportation should be prohibited because immigration agents lacked a warrant to search the premises where he was arrested. 468 U.S. 1032, 1035, 1039 (1984). These cases might provide support for the Respondents' argument if Ms. N.V. were asking this Court to prohibit the government from initiating or prosecuting removal proceedings against her.[5] She is not. Instead, she seeks core habeas relief—release from custody. Seeking release from custody in an immigration habeas case based on an illegal arrest is not akin to a criminal defendant's claim that his unlawful arrest should prohibit the government from prosecuting him for a crime, nor is it like a noncitizen's effort to prohibit the government from pursuing removal proceedings.

Accordingly, the Court is not persuaded by the Respondents' contention that release from custody cannot be an appropriate remedy in a habeas case where the Petitioner has shown that her arrest did not comply with the law. This Court will, therefore, continue to follow other decisions from within this District that have ordered release of habeas petitioners whose warrantless arrests did not comply with § 1357(a)(2). *See Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *3 (D. Minn. June 29, 2026) (ordering the release of a habeas petitioner whose warrantless arrest did not comply with § 1357(a)(2)).

---

[5] Federal law generally prohibits district courts from reviewing decisions to initiate or prosecute removal proceedings against a noncitizen. 8 U.S.C. § 1252(g) (providing that "notwithstanding any other provision of law … including section 2241 of Title 28, or any other habeas corpus provision, … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action … to commence proceedings, adjudicate cases, or execute removal orders against any alien").

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1. The Report and Recommendation (Dkt. 24) is **ACCEPTED**.

2. Respondents' Objections (Dkt. 25) are **OVERRULED**.

3. The Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED** as set forth herein.

4. Respondents are **ORDERED** to immediately release Petitioner Emily Andreina N.V., at a time and place communicated in advance to counsel, and with all her possessions.

5. Respondents are **ORDERED** promptly to file an update on the docket showing that such release has taken place.

**Let Judgment be entered accordingly**.

Date: July 31, 2026

s/ Katherine Menendez
Katherine Menendez
United States District Judge

12